UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Avnet, Inc., a New York corporation, Civ. File No. 00-1789 (PAM/JGL)

Plaintiff,

v. **MEMORANDUM AND ORDER**

Robert B. Beale, an individual,
Horace K. Beale, an individual, and
BayRiver Corporation, a Minnesota corporation,

Defendants.

---

This matter is before the Court on the parties' cross motions for partial summary judgment. For the reasons that follow, the Court grants in part and denies in part Plaintiff Avnet, Inc.'s Motion and grants in part and denies in part Defendant Robert Beale's Motion.

**BACKGROUND**

The facts of this case are largely undisputed. Plaintiff Avnet, Inc. is a distributor of electronic components and computer products, and a judgment creditor of now-insolvent Control Systems, Inc.[1] Defendant Robert Beale ("Beale") is the majority shareholder, sole director, and an officer of Control Systems.

On September 26, 1996, Control Systems entered into loan and security agreements

---

[1] Pursuant to a January 19, 1999, Ramsey County judgment, Control Systems owes Avnet $703,351. According to Avnet, with interest and costs and expenses of collection, the current amount owed pursuant to the judgment is $877,778.30.

FILED JUN 11 2001
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD________
DEPUTY CLERK________

with Republic Acceptance Corporation ("Republic"), whereby Republic extended a line of credit to Control Systems, and whereby Control Systems granted Republic a first priority security interest in all of its assets. (See Kanowitz Aff. Exs. 5-6.) Beale personally guaranteed Control Systems' obligations under the loan and security agreements. (See id. Ex. 7.) Over the course of the next few months, Control Systems drew repeatedly from Republic's line of credit. During that time, Control Systems' financial condition deteriorated dramatically. As a consequence, on June 6, 1997, Republic requested that Control Systems seek alternative forms of financing, and that the company pay in full all amounts due by no later than August 29, 1997. (See id. Ex. 8.) That deadline was later extended.

By October 1997, Control Systems was insolvent. In order to pay down the debt to Republic pursuant to the loan agreement, Beale personally loaned Control Systems $90,000 on October 2, 1997, and $110,000 on October 13, 1997. In addition, on October 30, 1997, Beale made a payment directly to Republic in the amount of $224,804.39, to cover the remaining outstanding principal and all accrued interest due from Control Systems under the loan agreement. On that same day, Republic assigned Beale its rights under both the loan and security agreements. (See Pl.'s Ex. L.) Thereafter, Beale advanced Control Systems approximately $477,635.79 to cover current operating costs pursuant to the assignment agreement. As the assignee of the secured interest, Beale treated himself as a secured creditor of Control Systems, and received near full payment for each of those advances,

including the advances made in October 1997, prior to the assignment.[2] Although he maintains that he advanced approximately $450,000 to Control System prior to October 1997, and that those advances were somehow also secured, Beale has not been reimbursed for those advances, and they have no bearing on this lawsuit.

On January 19, 1999, the same day Avnet received its judgment from Ramsey County, Defendant BayRiver was incorporated by Beale's brother, Defendant Horace Beale, who is also BayRiver's sole officer and director. Shortly thereafter, Beale transferred all of Control Systems' assets to BayRiver. No money was exchanged, but BayRiver agreed that if Control Systems' outstanding account receivables were recouped, it would pay Beale up to $100,000. (See id. Exs. T-U.) BayRiver ultimately collected $127,468 in accounts receivable, and, pursuant to the asset purchase agreement, paid Beale $100,000.

On July 27, 2000, Avnet commenced this lawsuit against Beale, BayRiver, and Horace Beale seeking reversal of the payments made to Beale, and payment in satisfaction of the Ramsey County judgment in the amount of $877,778.30. Avnet alleges that Beale breached his fiduciary duty to Control Systems' creditors, and that under principles of equity, Beale's security interest should be deemed subordinate to its Ramsey County judgment. Avnet raises several other theories of recovery; however, only the disposition of Avnet's breach of fiduciary duty and equitable subordination claims is presently before the Court.

---

[2] Beale was repaid $830,846.62 for advances made by him after October 2, 1997. According to Beale, Control Systems still owes him $71,593.56 for his post-assignment advances. (See Def.'s Mem. in Supp. Mot. for Sum. J. at 8.)

## DISCUSSION

### A. Standard

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Unigroup, Inc. v. O'Rourke Storage & Transfer Co., 980 F.2d 1217, 1219-20 (8th Cir. 1992). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. Enter. Bank v. Magna Bank, 92 F.3d 743, 747 (8th Cir. 1996). However, as the United States Supreme Court has stated, "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action." Celotex, 477 U.S. at 327 (quotation omitted).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Enter. Bank, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Krenik, 47 F.3d at 957.

**B. Merits**

Both parties move for summary judgment on Avnet's claims of breach of fiduciary duty and equitable subordination, each of which is brought only against Beale. According to Avnet, summary judgment should be granted in its favor because Beale breached his fiduciary duty to Avnet and all other unsecured creditors by accepting payment for loans while Control Systems was insolvent. Beale does not dispute that he owed a fiduciary duty to Avnet, but rather, maintains that his actions did not constitute a breach of that duty because as the only secured creditor, he was entitled to repayment of his debt before Control Systems repaid its debt to its unsecured creditors, among them Avnet.

As both parties note, when a corporation is insolvent or on the verge of insolvency, its directors and officers become fiduciaries of the corporate assets for the benefit of creditors. Snyder Elec. Co. v. Fleming, 305 N.W.2d 863, 869 (Minn. 1981). "As fiduciaries, they cannot by reason of their special position treat themselves to a preference over other creditors." Id. In this context, a "preference" is defined as "a transfer or encumbrance of corporate assets . . . the effect of which is to enable the director or officer to recover a greater percentage of his debt than general creditors of the corporation with otherwise similarly secured interests." Id. In particular, "payment or grant of security by an insolvent corporation to its officers and directors for antecedent debts to them is an invalid preference." Id. Once an unsatisfied creditor establishes that transactions occurred between an insolvent company and a corporate insider, the onus then passes to the corporate insider to prove that

the transactions did not constitute preferences. Id. at 871.

As an initial matter, Beale contends that Snyder does not render the payments in this case improper because it applies exclusively to cases in which a corporate insider acts unilaterally to gain a benefit because of his insider status. See, e.g., id. at 869 (finding breach of fiduciary duty where chief officer of company took an assignment from the company in payment for previous note due to officer); B&S Rigging & Erection, Inc., 353 N.W.2d 163, 168 (Minn. Ct. App. 1984) (finding of breach of fiduciary duty where officers of company unilaterally decided to set-off loans personally guaranteed by them). In contrast, Beale notes that in this case, Republic, an independent third party, was responsible for making Beale a priority creditor. The Court is not persuaded that this distinction is dispositive. Generally speaking, Snyder prohibits corporate insiders from gaining preferential treatment because of their close connection with the company. See Snyder, 305 N.W.2d at 869. While such preferential treatment may most often arise from arrangements made directly between the officer or director and the company, it may also arise in other situations. Where, as here, a director or officer uses the connections made through the company to gain an advantage not readily available to other creditors, the same unlawful preferential treatment may result. Therefore, although Republic is an independent third party, Beale was able to effectuate the assignment agreement, which resulted in a preferential creditor status, solely because of his connection with Control Systems. The end result is no different than if he had granted himself secured creditor status through a Control Systems board resolution. Accordingly,

the Court finds that the prohibitions articulated in Snyder apply with equal force here.

It is undisputed that Beale recouped loans from, and therefore engaged in transactions with, Control Systems, when Control Systems was insolvent. Thus, Beale must establish that the repayment of his loans did not a constitute preference based on his insider status. See Snyder, 305 N.W.2d at 871. As previously noted, Beale's position hinges on his contention that all monies advanced by him during and after October 1997 were secured payments pursuant to the assignment agreement, and that as the only secured creditor he had the right to accept payment before all other creditors, notwithstanding his fiduciary role. For purposes of these Motions, the Court will assume that Beale's contention is correct, and that as a secured creditor, he was entitled to recover his advances before unsecured creditors were paid. Such a finding does not, however, end the inquiry.

Given that Beale did not become a secured creditor until Control Systems was insolvent, the Court must consider whether the assignment agreement conveying that secured status was entered into in breach of Beale's fiduciary duty. After reviewing the record, the Court is satisfied that Beale entered into the assignment agreement for the sole purpose of becoming a secured creditor. Other than to gain secured creditor status, Beale has presented no plausible explanation for his decision to enter into the assignment agreement with Republic. Indeed, had Beale remained an unsecured creditor, he would not have been able to recoup any antecedent debts before other unsecured creditors. See id. at 869 (noting that a breach of fiduciary duty occurs when a "director or officer . . . recover[s] a greater

percentage of his debt than general creditors of the corporation with otherwise similarly secured interests"). Thus, the Court concludes that Beale's assignment agreement with Republic "could not be other than a bold attempt to secure the indebtedness of the corporation to himself to the exclusion of other creditors." Smith v. Mississippi Livestock Producers Ass'n, 188 So. 2d 758, 765 (Miss. 1966). As such, payments made for antecedent debts based on the assignment agreement were impermissible preferences.

After reviewing the each of the payments at issue, the Court finds that the payments to recoup Beale for his loans to Control Systems and payment to Republic made during October 1997 were for antecedent debts, and were therefore improper. Each of the October 1997 payments, totaling $424,804.39, were made by Beale as the guarantor of Republic's line of credit. As the guarantor, Beale was obligated to pay Republic in the event that Control Systems could not. (See Kanowitz Aff. Ex. 7.) Therefore, when Control Systems drew upon the line of credit, Beale became secondarily liable for the debt. The debts paid by Beale on behalf of Control Systems in October 1997 preexisted the security agreement, and were therefore antecedent debts, rather than current corporate debts. As such, Beale could not properly collect on that debt to the exclusion of other unsecured creditors. Beale argues that under Minnesota law, he was entitled, as the guarantor, to immediate repayment as a subrogee. See Conner v. How, 29 N.W. 314, 316 (Minn. 1886) (holding that upon payment by guarantor, the guarantor is immediately entitled to be subrogated for that payment). While the Court does not does not generally disagree with Beale's statement of

the law, Beale has not established, as he must, that his rights as a subrogee trump those of Control Systems' other similarly situated creditors. Accordingly, the $424,804.39 received by Beale as reimbursement for his October 1997 payments constitutes an impermissible preference and must be reversed.

In contrast to the prohibition relating to antecedent debts, "insolvency is [not] a bar to reimbursing corporate executives for personally paying current corporate debts." Snyder, 305 N.W.2d at 869. In this case, the Court concludes that Control Systems' payments to Beale for his loans to Control Systems for ongoing operating expenses after October 30, 1997, totaling $406,042.23, were current debts of the company and therefore were immediately recoverable notwithstanding Beale's fiduciary duty to Avnet, and regardless of his status as a secured or unsecured creditor.

In sum, the Court concludes that Control Systems' reimbursement for Beale's payments made in October 1997 was improper and must be reversed. However, the payments made thereafter to reimburse Beale for operations expenditures were not improper. Accordingly, Beale must return a total of $424,804.39 to Control Systems for distribution to its unsecured creditors. In order to efficiently handle the reversal in payment and to ensure that there are no outstanding unsecured creditors that may be entitled to some portion of that money, the parties are to submit a joint proposal within thirty days of the date of this Order specifying the precise method of reversal and identifying all known Control Systems creditors.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court grants in part and denies in part Avnet's Motion for Summary Judgment and grants in part and denies in part Beale's Motion for Summary Judgment.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Plaintiff Avnct Inc.'s Motion for Summary Judgment (Clerk Doc. No. 23) is **GRANTED IN PART AND DENIED IN PART**;
2. Defendant Robert Beale's Motion for Summary Judgment (Clerk Doc. No. 17) is **GRANTED IN PART AND DENIED IN PART**; and
3. The parties shall submit a joint proposal within thirty days of the date of this Order specifying the precise method of reversal and identifying all known Control Systems creditors.

Dated: June 9, 2001

Paul A. Magnuson
United States District Court Judge